## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARÍA DE JESÚS RIVERA; VANESSA FLORES DE JESÚS; BRENDA FLORES DE JESÚS; VERONICA FLORES DE JESÚS; RAFAEL FLORES QUINTANA | CIVIL NO: 18-1175 |
| Plaintiffs, | RE: TORT ACTION FOR MEDICAL MALPRACTICE PURSUANT TO FEDERAL TORT CLAIMS ACT |
| v. | |
| NEOMED CENTER, INC.; A,B,C INSURANCE COMPANIES; DR. JAMES/JANE ROE I-X; CONJUGAL PARTNERSHIPS ROE-X I-X; MOES I-X | |
| Defendants | JURY TRIAL DEMANDED |

## COMPLAINT

**TO THE HONORABLE COURT:**

   **APPEAR NOW MARÍA DE JESÚS RIVERA; VANESSA FLORES DE JESÚS; BRENDA FLORES DE JESÚS; VERONICA FLORES DE JESÚS;** and **RAFAEL FLORES QUINTANA** (hereinafter referred to collectively as "Plaintiffs"), through the undersigned counsel, and hereby state, allege, and request as follows:

### JURISDICTIONAL BASIS

1. This case is based upon federal question jurisdiction under 28 U.S.C. §1346(b) for Plaintiffs**.**

2. Defendant **NEOMED CENTER, INC**. is a covered facility under the Federal Tort Claims Act, pursuant to the Federally Supported Health Centers Assistance Act (FSHCAA), 42 U.S.C. §233(a).

3. Timely administrative claims were presented by all Plaintiffs to the United States Department of Health and Human Services on May 12, 2017. *See* Exhibit 1.

4. Over six months have elapsed since the administrative claims were presented, and the undersigned have not received a response from the Department of Health and Human Services.

5. Thus, administrative remedies were duly exhausted prior to filing the instant claim.

6. The applicable statute of limitations for the aforementioned cause of action was tolled by the filing of a state case, Civil No. SJ2017CV00724, *María De Jesús Rivera et al. v. Hospital Español Auxilio Mutuo et al.* in the Puerto Rico Court of First Instance, San Juan Division on July 14, 2017. A motion for voluntary dismissal without prejudice was filed on November 10, 2017 and granted by said Court on December 4, 2017.

7. Venue lies in this district pursuant to 28 U.S.C. §1402(b), since several Plaintiffs reside in this district and the acts and omissions giving rise to this Complaint occurred in this district.

**THE PARTIES**

8. Plaintiff **MARÍA DE JESÚS RIVERA** is the widow of the deceased Guillermo Flores Quintana, who passed away on August 21, 2016.

9. Plaintiff **VANESSA FLORES DE JESÚS** is the eldest daughter of the deceased Guillermo Flores Quintana, who passed away on August 21, 2016.

10. Plaintiff **BRENDA FLORES DE JESÚS** is the middle daughter of the deceased Guillermo Flores Quintana, who passed away on August 21, 2016.

11. Plaintiff **VERONICA FLORES DE JESÚS** is the youngest daughter of the deceased Guillermo Flores Quintana, who passed away on August 21, 2016.

12. Plaintiff **RAFAEL FLORES QUINTANA** is the brother of the deceased Guillermo Flores Quintana, who passed away on August 21, 2016.

13. Co-Defendant **NEOMED CENTER, INC.** is the owner and/or operator of a diagnostic and treatment center/emergency room in Gurabo, Puerto Rico, which provides emergency and other outpatient services. It is a domestic non-profit corporation incorporated under the laws of Puerto Rico, where it also holds its principal place of business.

14. Co-Defendants **A, B, C INSURANCE COMPANIES** are entities or corporations organized or operating under the laws of Puerto Rico, or with their principal place of business in Puerto Rico, who at the time of the events alleged in this Complaint had issued valid insurance policies in favor of one or more known or unknown Co-Defendants which offered coverage for the acts and omissions described herein.

15. Co-Defendants **DR. JAMES/JANE ROE I-X**, referred to by fictitious names due to the lack of knowledge as to their real names, are jointly and severally liable for the negligent actions and omissions detailed below and as a result, for the damages suffered by Plaintiffs.

16. Co-Defendants **CONJUGAL PARTNERSHIPS ROE-X I-X**, referred to by fictitious names due to the lack of knowledge as to their real names, are the purported conjugal partnerships composed of Dr. James/Jane Roe I-X and their respective spouses, who are currently unknown.

17. Co-Defendants **MOES I-X**, referred to by fictitious names due to the lack of knowledge as to their real names, are responsible for Plaintiffs' damages whether individually or jointly and severally.

## GENERAL ALLEGATIONS

18. Guillermo Flores Quintana was 65 years old at the time of his death. He was a dedicated, strong, and hardworking man who was beloved by his entire family.

19. At the time of the events, Guillermo Flores Quintana had a medical history of asthma and a recent diagnosis of Type II Diabetes Mellitus.

20. On July 31, 2016, Guillermo Flores Quintana arrived at the Emergency Department of NEOMED CENTER, INC. complaining of pain throughout his body and throat dating back one month, as well as rash and itchiness.

21. The medical record notes that the patient has a medical history of asthma and diabetes, and a diagnosis of "uncontrolled asthma" and "uncontrolled diabetes" was made after Dr. Dora Colón evaluated Guillermo Flores Quintana.

22. Dr. Dora Colón ordered the administration of insulin and other medication through IV fluids, as well as a basic metabolic panel.

23. Glucose tests revealed blood sugar levels of 514, which was notified to Dr. Dora Colón.

24. This result is extremely outside of the normal range for an individual with diabetes, particularly one who is already taking blood sugar medication at home.

25. Besides his hyperglycemic state, Guillermo Flores Quintana also presented mild tachycardia.

26. Moreover, Guillermo Flores Quintana waited for hours without being attended by respiratory therapy personnel at NEOMED, despite his preexisting condition of asthma and complaints of shortness of breath.

27. Dr. Dora Colón released Guillermo Flores Quintana a few hours later. At the time of his release, the patient's blood sugar levels were at 253, which remain dangerous for someone with diabetes.

28. Dr. Dora Colón failed to order a hematological blood panel or to consult physicians with specialties in endocrinology and pulmonology in order to inquire further as to Mr. Flores' two previous instances of leukocytosis and hyperglycemia.

29. Dr. Dora Colón allowed Guillermo Flores Quintana to return home without having controlled his blood sugar levels or taking the necessary steps to treat the patient's underlying infectious condition.

30. As such, it was predictable that the patient's condition would worsen.

31. On August 1, 2016, Guillermo Flores Quintana went to a scheduled appointment with pulmonologist Dr. Edgardo Cartagena, accompanied by his daughter Vanessa Flores.

32. During this visit, Dr. Cartagena examined the patient and discovered his uncontrolled diabetes and the presence of chronic obstructive pulmonary disease.

33. Dr. Cartagena immediately referred Guillermo Flores Quintana to Hospital Menonita de Caguas for admission under the care of Dr. Anstrong Figueroa Rivera.

34. Guillermo Flores Quintana was admitted that day with chief complaints of shortness of breath and uncontrolled blood sugar.

35. Guillermo Flores Quintana remained hospitalized at Hospital Menonita de Caguas until August 13, 2016, during which time he had a hernia operation.

36. Guillermo Flores Quintana was released from Hospital Menonita de Caguas on August 13, 2016, only two days post-surgery and with uncontrolled blood sugar levels and infection.

37. Guillermo Flores Quintana subsequently developed a hematoma in the inguinal area soon after the surgery to remove his hernia.

38. The skin around the wound was dark, which emanated to the genital area.

39. On August 14, 2016, Guillermo Flores Quintana returned to the Emergency Department at NEOMED, with the chief complaint of elevated glucose.

40. He was attended by Dr. John Doe Díaz, whose first name cannot be gleaned from the medical record and so is identified by this alias.

41. Dr. Díaz did not adequately examine or evaluate the patient, nor did he stabilize Guillermo Flores Quintana's diabetes; rather, he sent the patient home soon after his arrival to the Emergency Department.

42. Dr. Díaz additionally failed to take a proper and thorough medical history of the patient, and did not pay attention to the elevated white blood cells.

43. Dr. Díaz did not treat Guillermo Flores Quintana's hematoma, nor did he refer the patient to the hospital for treatment of his postoperative symptoms.

44.  On August 17, 2016, Guillermo Flores Quintana visited endocrinologist Dr. Horidel Febo Reyes to treat his altered blood sugar levels, accompanied by his wife María De Jesús and daughter Vanessa Flores.

45.  Dr. Febo referred the patient to Hospital Menonita de Caguas urgently.

46.  Guillermo Flores Quintana and his family went to the Hospital Menonita de Caguas and was evaluated and sent home that same day by Dr. John Doe Pesquera.

47.  On the morning of August 18, 2016, Guillermo Flores Quintana called his neighbor and asked for help mowing his lawn.

48.  While the neighbor was outside, Guillermo Flores Quintana supervised him from the house, accompanied by his daughter Verónica Flores and her infant son.

49.  Suddenly, Guillermo Flores Quintana became pale, said he felt unwell, and collapsed onto the floor unconscious.

50.  The neighbor heard Verónica's screams and rushed into the house, finding Guillermo Flores Quintana unconscious.

51.  They called another neighbor to help carry Guillermo Flores Quintana to the car, and drove immediately to NEOMED.

52.  Verónica Flores stayed behind while she attempted to contact her mother and sisters, and to find someone who could take care of her son.

53.  Upon their arrival at NEOMED, one of the neighbors alerted the medical and nursing staff as to Guillermo Flores Quintana's urgent condition, then came back to assist personnel in moving the patient first to a wheelchair and then a gurney.

54. Despite Guillermo Flores Quintana's critical condition, NEOMED personnel did not treat him immediately, allowing approximately 15-20 minutes to pass before commencing first aid.

55. During this entire time, the neighbor called Henry Quintero Sanchez kept insisting that Guillermo Flores Quintana was in a grave state and needed urgent medical attention.

56. When Guillermo Flores Quintana was finally attended by NEOMED's medical and nursing personnel, the patient had no vital signs and his blood sugar was over 500 milligrams.

57. Dr. López examined Guillermo Flores Quintana at this time and diagnosed him as "Dead on Arrival," in addition to being hyperglycemic and in the midst of cardiac arrest.

58. Resuscitation measures were commenced, but although they were able to reanimate Guillermo Flores Quintana, he had already suffered irreparable brain damage.

59. After being resuscitated, Guillermo Flores Quintana was transferred to Hospital Menonita de Caguas via ambulance under Dr. López's orders.

60. Once he arrived at Hospital Menonita de Caguas, Guillermo Flores Quintana remained intubated in the Emergency Department while several studies were carried out in order to determine his condition.

61. During his final days of life, Guillermo Flores Quintana continued to experience high and even uncontrolled levels of blood sugar and white blood cells.

62. Moreover, his troponin levels were high, indicating that he was at imminent risk for cardiac arrest.

63. Finally, at 2:35 a.m. on August 21, 2016, a code blue was called due to the patient suffering asistole, or cardiac failure due to the absence of ventricular contractions.

64. Extraordinary resuscitative measures were implemented, but it was not enough and Guillermo Flores Quintana passed away at 3:20 a.m.

65. Guillermo Flores Quintana's death certificate indicates that his main causes of death were: severe respiratory failure, cerebral anoxia, and pneumonia. It also states that Type II diabetes contributed to his death.

66. Guillermo Flores Quintana suffered severe physical, emotional, and mental damages for weeks as a result of Defendants' negligent acts and omissions.

67. Because of Defendants, Guillermo Flores Quintana suffered a painful death, preceded by nearly a month of agony as Defendants repeatedly refused him the appropriate medical care due to a lack of treatment continuity and communication between the physicians who intervened with the patient.

68. Guillermo Flores Quintana's death is a direct result of Defendants' negligent acts and omissions, including: their complete failure to control the patient's blood sugar levels despite the repeated panic values, failure to determine the cause of his infection and treat the same promptly, failure to admit him to the hospital for observation and medical treatment, failure to obtain the necessary consultations from specialists which where required to determine the cause of his condition, and failing to promptly and adequately treat him upon arrival on August 18, 2016.

69. All of the aforementioned has caused and continues to cause Plaintiffs severe emotional and mental damages.

## FIRST CAUSE OF ACTION
## AGAINST NEOMED CENTER, INC. AND ITS PERSONNEL

70. The allegations contained above are incorporated by reference as if again fully set forth herein.

71. Co-Defendant NEOMED CENTER, INC. operates a diagnostic and treatment center in Gurabo, Puerto Rico, which offers patients medical treatment and whose services include an Emergency Department.

72. The treatment offered to Guillermo Flores Quintana by Co-Defendant NEOMED CENTER, INC. was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing Plaintiffs the untimely death of their beloved husband, brother and father and the injuries to each, as described herein.

73. Co-Defendant NEOMED CENTER, INC. failed to exercise due care and the required precautions under the circumstances to prevent Guillermo Flores Quintana's damages and death.

74. Co-Defendant NEOMED CENTER, INC. failed to examine, evaluate, stabilize, diagnose, and treat Guillermo Flores Quintana appropriately.

75. Co-Defendant NEOMED CENTER, INC.'s personnel lacked the requisite medical knowledge and skills to perform their work within the standards and exigencies generally recognized by the medical profession in light of the modern

means of communication and teaching, and conforming to the prevailing state of science and practice in the medical field.

76. Co-Defendant NEOMED CENTER, INC.'s personnel failed to recognize, or alternatively ignored, the gravity of Guillermo Flores Quintana's condition when he presented to the Emergency Department on multiple occasions with uncontrolled blood sugar and a high white blood cell count.

77. The treatment offered to Guillermo Flores Quintana through Co-Defendant NEOMED CENTER, INC.'s medical, nursing, technical personnel, and/or the doctors who either are employees or have privileges who used its facilities, was a negligent departure from the exigencies and standards generally recognized by the medical profession regarding the treatment of a patient with high levels of blood sugar and white blood cells, as well as a recent medical history of Type II diabetes.

78. Co-Defendant NEOMED CENTER, INC.'s personnel negligently failed to provide timely and adequate treatment or administer medication to counteract Guillermo Flores Quintana's dangerously uncontrolled glucose levels, which could have saved his life.

79. Co-Defendant NEOMED CENTER, INC.'s nursing personnel failed to monitor the patient's condition or provide immediate basic follow-up to Guillermo Flores Quintana, and unnecessarily delayed the implementation of first aid and resuscitative measures when the patient arrived unconscious at the Emergency Department on August 18, 2016.

80. The care provided by Co-Defendant NEOMED CENTER, INC.'s nursing personnel was completely negligent and inadequate.

81. Co-Defendant NEOMED CENTER, INC.'s personnel failed to ensure that Guillermo Flores Quintana was provided with the proper medical and technical care by its Emergency Department.

82. Co-Defendant NEOMED CENTER, INC., its directors, officers, and employees and physicians with privileges were negligent in failing to provide the proper medical attention to Guillermo Flores Quintana, in failing to provide the proper supervision of Dr. Dora Colón, Dr. John Doe Díaz, Dr. John Doe López, DR. JAMES/JANE ROE I-X, and other unknown physicians, interns, and residents employed by and/or practicing at NEOMED, and by otherwise failing to exercise due care and caution to prevent the tortious conduct, injuries, and suffering to Plaintiffs and to Guillermo Flores Quintana.

83. Co-Defendant NEOMED CENTER, INC. not only failed to adequately supervise the Co-Defendant physicians and/or ensure their prompt evaluation of the patient, but also permitted the use of its facilities. In doing so, it permitted and encouraged the negligent medical care and inadequate treatment provided to Guillermo Flores Quintana, such that it was the direct and proximate cause of the damages suffered by the deceased as well as the Plaintiffs.

84. Co-Defendant NEOMED CENTER, INC. offered medical services to the public, but did not supply its diagnostic and treatment center with the necessary medical staff to treat its patients in a timely, safe, and adequate manner.

85. In so doing, Co-Defendant NEOMED CENTER, INC. deceived those who sought complete and adequate medical treatment at its premises, by making them believe that they would be treated properly.

86. During Guillermo Flores Quintana's visits to NEOMED CENTER, INC., the medical, technical, and nursing personnel at NEOMED, as well as Dr. Dora Colón, Dr. John Doe Díaz, Dr. John Doe López, Dr. James/Jane Roe I-X, failed to offer the patient the proper medical care and treatment, thus incurring in medical malpractice, which resulted in the patient's deteriorating condition and his eventual death.

87. As a direct and proximate result of Co-Defendant NEOMED CENTER, INC.'s negligence, Guillermo Flores Quintana suffered irreparable neurological damage due to cerebral anoxia, which later resulted in his death.

88. As a result of Co-Defendant NEOMED CENTER, INC.'s negligent actions and omissions as described above, Plaintiffs suffered the damages detailed herein, for which Co-Defendant NEOMED CENTER, INC. is jointly and severally liable.

### SECOND CAUSE OF ACTION
### AGAINST A, B, C INSURANCE COMPANIES

89. The allegations contained above are incorporated by reference as if again fully set forth herein.

90. Co-Defendants A, B, C INSURANCE COMPANIES were, at all times herein pertinent, insurance companies authorized to do business in the Commonwealth of Puerto Rico and which issued valid public liability and/or malpractice insurance policies on behalf of one or more known or unknown Co-Defendants.

91. Co-Defendants A, B, C INSURANCE COMPANIES are jointly and severally liable for the tortious acts committed by Co-Defendants, whether known or unknown, as well as any other additional unknown Defendant.

92. Pursuant to 26 L.P.R.A. §2001, an insurance company is liable for the negligence or fault of its insured.

93. Pursuant to 26 L.P.R.A. §2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

94. Therefore, Co-Defendants A, B, C INSURANCE COMPANIES are jointly and severally liable to Plaintiffs for the damages caused to them and Guillermo Flores Quintana by one or more Co-Defendants, whether known or unknown.

**THIRD CAUSE OF ACTION**
**AGAINST DR. JAMES/JANE ROE I-X**

95. The allegations contained above are incorporated by reference as if again fully set forth herein.

96. Co-Defendants DR. JAMES/JANE ROE I-X are tortfeasors of the damages described below. They are denominated as such due to the current lack of knowledge as to their real names and/or identities.

97. Co-Defendants DR. JAMES/JANE ROE I-X caused damages to Plaintiffs through fault or negligence as a result of their acts and omissions, or through the acts and omissions of their employees, agents, representatives, or assignees, thereby violating Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and 5142.

98. Co-Defendants DR. JAMES/JANE ROE I-X had a duty of care towards Guillermo Flores Quintana and Plaintiffs to provide quality personnel, physicians,

installations, medical care and treatment that would have given Guillermo Flores Quintana the level of care that a reasonable and prudent person would employ under the same conditions and circumstances.

99. Co-Defendants DR. JAMES/JANE ROE I-X had a duty of care towards Guillermo Flores Quintana and Plaintiffs to provide the patient with quality medical care and treatment in keeping with the medical standards which satisfy the exigencies generally recognized by the medical profession in light of modern methods of teaching and communication.

100. The medical care and treatment offered by Co-Defendants DR. JAMES/JANE ROE I-X to Guillermo Flores Quintana, either directly or through personnel, nurses, employees, agents and assignees was not what a prudent and reasonable person would have offered in the same conditions and circumstances, and thus inferior to the medical standards which satisfy the exigencies generally recognized by the medical profession in light of modern methods of teaching and communication; and, as a result, directly caused or contributed to Guillermo Flores Quintana's needless pain, suffering, and death, as well as the pain and suffering of his wife, daughters, and brother, as described in this Complaint.

101. Co-Defendants DR. JAMES/JANE ROE I-X did not provide Guillermo Flores Quintana with the appropriate medical treatment and care, including, but not limited to: not possessing or exercising the required medical knowledge and skills; failing to obtain or receive the appropriate medical training; failing to perform adequate tests and evaluations for Guillermo Flores Quintana; failing to provide Guillermo Flores Quintana with the appropriate medical procedures in

light of his condition; omitting and/or inadequately managing the administration of medication during the patient's treatment; failing to exercise due care and precautions; failing to order, properly carry out and/or correctly interpret the pertinent studies and/or evaluation procedures; failing to take the necessary and appropriate steps to treat or improve Guillermo Flores Quintana's condition in a timely manner.

102. As a direct result of Co-Defendants DR. JAMES/JANE ROE I-X's negligence and/or the negligence of their employees, agents or assignees, Guillermo Flores Quintana suffered physical and emotional pain and suffering as well as a needless and premature death, which in turn has caused severe pain and suffering to his wife, daughters, and brother, as described herein, and which is ongoing.

## FOURTH CAUSE OF ACTION
## AGAINST DR. JAMES/JANE DOE I-X CONJUGAL PARTNERSHIPS

103. The allegations contained above are incorporated by reference as if again fully set forth herein.

104. Upon information and belief, at the time of the events narrated in this Complaint, Co-Defendants DR. JAMES/JANE ROE I-X were married and formed part of conjugal partnerships with their spouses, who are referred to by fictitious names due to the lack of knowledge as to their real names.

105. The acts committed by Co-Defendants DR. JAMES/JANE ROE I-X were for the benefit of their conjugal partnerships.

106. As such, these conjugal partnerships are jointly and severally liable for the damages caused by Co-Defendants DR. JAMES/JANE ROE I-X to Guillermo Flores Quintana and consequently, Plaintiffs.

**FIFTH CAUSE OF ACTION**
**AGAINST MOES I-X**

107. The allegations contained above are incorporated by reference as if again fully set forth herein.

108. Co-Defendants MOES I-X caused damages to Plaintiffs through fault or negligence as a result of their acts and omissions, or through the acts and omissions of their employees, agents, representatives, or assignees, thereby violating Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and 5142.

109. As a direct result of Co-Defendants MOES I-X's negligence and/or the negligence of their employees, agents or assignees, Guillermo Flores Quintana suffered physical and emotional pain and suffering as well as a needless and premature death, which in turn has caused severe pain and suffering to his wife, daughters, and brother, as described herein, and which is ongoing.

**DAMAGES**

110. The allegations contained above are incorporated by reference as if again fully set forth herein.

111. As a result of Co-Defendants' professional negligence, malpractice, lack of expertise, fault, and tortious acts and omissions, Plaintiffs unnecessarily and prematurely lost their beloved husband, father, and brother, Guillermo Flores Quintana.

112. As a result of Co-Defendants' professional negligence, malpractice, lack of expertise, fault, and tortious acts and omissions, Plaintiffs were forced to live through the agony of watching their beloved family member languish for over a

month without receiving the appropriate medical care and treatment while his condition worsened, even though he repeatedly sought medical attention from the various health care institutions identified above.

113. As a direct and proximate result of Defendants' negligence, Guillermo Flores Quintana's condition was allowed to progress unchecked until it caused his death.

114. As a direct and proximate result of Defendants' negligence, Guillermo Flores Quintana's astronomical blood sugar levels were not controlled, which placed him at a high risk of developing future medical complications, such as cardiac arrest.

115. As a direct and proximate result of Defendants' negligence, Guillermo Flores Quintana's underlying condition was not treated promptly, which resulted in his multiple returns to Co-Defendant health care institution to receive substandard medical treatment.

116. As a direct and proximate result of Defendants' negligence, Guillermo Flores Quintana suffered a syncope in front of his dear daughter, here Plaintiff Verónica Flores De Jesús, falling unconscious and strongly impacting Verónica's emotional state, who was convinced her father was dying before her very eyes.

117. As a direct and proximate result of Defendants' negligence, Guillermo Flores Quintana was not promptly attended to despite his urgent condition and suffered irreparable neurological damage, which he was also unable to overcome.

118. As a direct and proximate result of Defendants' negligence, Guillermo Flores Quintana suffered for three (3) days in an intensive care unit before passing away.

119. As a direct and proximate result of Defendants' negligence, Guillermo Flores Quintana died as a result of preventable conditions due to lack of attention and proper medical care and treatment.

120. As a result, Guillermo Flores Quintana's pain and suffering has a reasonable value of no less than **ONE MILLION FIFTY THOUSAND DOLLARS ($1,050,000)**. This amount is inherited by his widow and daughters, Plaintiffs MARÍA DOLORES DE JESÚS, VANESSA FLORES, BRENDA FLORES, and VERÓNICA FLORES under local law, who reclaim it on behalf of their deceased husband and father.

121. Plaintiffs all had close relationships with Guillermo Flores Quintana and loved him devotedly.

122. As a direct and proximate result of Defendants' negligence, Plaintiffs have been deprived of the irreplaceable opportunity of enjoying their husband, father, and brother's company and comfort, and will have to live with this anguish for the rest of their lives.

123. Plaintiff MARÍA DOLORES DE JESÚS has suddenly lost her life partner after decades of marriage.

124. At the time of the events described herein, Plaintiff MARÍA DOLORES DE JESÚS was confident that her husband would improve and they would return home to their normal lives.

125. Guillermo Flores Quintana and Plaintiff MARÍA DOLORES DE JESÚS had made many plans to remodel their house and travel in the near future.

126. Plaintiff MARÍA DOLORES DE JESÚS believed she and her husband still had decades of life and laughter ahead of them, growing old together and watching their grandchildren, who also had a special relationship with their grandfather, grow up.

127. This dream will never become a reality due to Defendants' negligent acts and omissions.

128. Plaintiff MARÍA DOLORES DE JESÚS has lost her main source of love and support, as well as a faithful husband and father to her daughters.

129. Plaintiff MARÍA DOLORES DE JESÚS' emotional damages stemming from the premature death of her beloved husband have a reasonable value of no less than **TWO MILLION DOLLARS ($2,000,000)**.

130. Plaintiff MARÍA DOLORES DE JESÚS has additionally lost her primary source of economic support, since she has always been a dedicated homemaker looking after her husband and daughters' home and well being throughout her marriage.

131. Plaintiff MARÍA DOLORES DE JESÚS is now only eligible to receive 50% of Guillermo Flores Quintana's retirement pension, which represents a diminished portion to their conjugal partnership.

132. Plaintiff MARÍA DOLORES DE JESÚS' economic damages as a result of her beloved husband's premature passing have a reasonable value of no less than **FIVE HUNDRED THOUSAND DOLLARS ($500,000)**.

133. Plaintiff VANESSA FLORES DE JESÚS constantly accompanied her father during the medical visits described in the instant Complaint.

134. As the eldest child, Plaintiff VANESSA FLORES DE JESÚS often looked after her father and was attentive to his health.

135. Plaintiff VANESSA FLORES DE JESÚS witnessed firsthand how Co-Defendants ignored her father's clear symptoms and failed to properly evaluate and treat him on various occasions.

136. Plaintiff VANESSA FLORES DE JESÚS also noted how her father was not provided with medication or treatment to lower his glucose levels, such that he was sent home repeatedly even though he was not stable.

137. Plaintiff VANESSA FLORES DE JESÚS trusted that the physicians intervening with her father were doing so correctly, and never imagined they would put his life in danger so inexcusably.

138. Plaintiff VANESSA FLORES DE JESÚS believed she would have many more years to enjoy her father's company, and take care of this exceptional man in his old age. This unexpected loss has rendered her inconsolable.

139. Plaintiff VANESSA FLORES DE JESÚS has not only lost a beloved father, but also her children's grandfather, who miss him daily.

140. Plaintiff VANESSA FLORES DE JESÚS' emotional and mental pain and suffering as a result of the death of her beloved father have a reasonable value of no less than **ONE MILLION DOLLARS ($1,000,000)**.

141. Plaintiff BRENDA FLORES DE JESÚS has suffered an irreparable loss with the death of her father, Guillermo Flores Quintana.

142. Plaintiff BRENDA FLORES DE JESÚS was the first to receive the fateful phone call from her sister Verónica after seeing their father collapse, and in that moment she thought she had lost him forever.

143. Plaintiff BRENDA FLORES DE JESÚS was incredulous that her father, a strong and relatively young man, was suddenly on the verge of death.

144. Plaintiff BRENDA FLORES DE JESÚS was at her father's side constantly during his last few days, praying for him to recover.

145. Plaintiff BRENDA FLORES DE JESÚS suffered deeply watching her father languish in the hospital and being unable to help or offer him comfort.

146. Furthermore, Plaintiff BRENDA FLORES DE JESÚS feels intense pain seeing her own children deprived of their grandfather's love and company.

147. Plaintiff BRENDA FLORES DE JESÚS' emotional and mental pain and suffering as a result of the death of her beloved father have a reasonable value of no less than **ONE MILLION DOLLARS ($1,000,000)**.

148. Plaintiff VERÓNICA FLORES DE JESÚS is devastated by the death of her father.

149. Plaintiff VERÓNICA FLORES DE JESÚS was at home with her father when he suffered a syncope and collapsed violently to the floor.

150. Plaintiff VERÓNICA FLORES DE JESÚS experienced a strong emotional shock at witnessing this event, whose effects continue to the present day.

151. Guillermo Flores Quintana was not only Plaintiff VERÓNICA FLORES DE JESÚS' father, but also served as a father figure to her infant son, whose own father passed away earlier this year.

152. Since she lived with her parents, Plaintiff VERÓNICA FLORES DE JESÚS had a close relationship with both of them, but had a special attachment to her father.

153. Plaintiff VERÓNICA FLORES DE JESÚS does not believe she will ever recover from this tragedy.

154. Plaintiff VERÓNICA FLORES DE JESÚS emotional and mental pain and suffering as a result of the death of her beloved father have a reasonable value of no less than **ONE MILLION DOLLARS ($1,000,000)**.

155. Plaintiff RAFAEL FLORES QUINTANA has suffered the unexpected and premature loss of a dear brother and confidant.

156. Plaintiff RAFAEL FLORES QUINTANA believed that his strong brother would last many more years, and was looking forward to spending time enjoying his company.

157. Plaintiff RAFAEL FLORES QUINTANA's emotional and mental pain and suffering as a result of the unnecessary death of his beloved brother have a reasonable value of no less than **SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS ($750,000)**.

158.

159. The total damages suffered by Plaintiffs as a result of the untimely loss of their husband, father, and brother, Guillermo Flores Quintana, have a reasonable value in excess of **SEVEN MILLION THREE HUNDRED THOUSAND DOLLARS ($7,300,000)** including, but not limited to, Plaintiffs' past, present and future damages as well as the inherited pain experienced by the deceased as described above.

## TRIAL BY JURY DEMANDED

160.  Plaintiffs demand trial by jury on all causes of action herein raised.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against all Defendants jointly and severally, in an amount not less than **SEVEN MILLION THREE HUNDRED THOUSAND DOLLARS ($7,300,000),** as well as costs incurred, reasonable attorneys' fees, and such other and further relief as this Honorable Court may deem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 28th day of March 2018.

**Plaintiffs' Counsel:**

**INDIANO & WILLIAMS, P.S.C.**
207 Del Parque St. 3rd Floor
San Juan, PR 00912
Tel: (787) 641-4545
 Fax: (787) 641-4544
jeffrey.williams@indianowilliams.com
vanesa.vicens@indianowilliams.com
c.davila@indianowilliams.com

*s/ Jeffrey M. Williams*
JEFFREY M. WILLIAMS
USDC PR 202414

*s/ Vanesa Vicéns Sánchez*
VANESA VICÉNS SÁNCHEZ
USDC PR 217807

 *s/ Christopher A. Dávila*
CHRISTOPHER A. DÁVILA
USDC PR 304103

24